IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              Case No. 2:13-CR-20029

MATTHEW FRANKLIN                                            DEFENDANT

## ORDER

Currently before the Court are Defendant Matthew Franklin's motion to suppress evidence

seized in unlawful search (Doc. 19) and motion to suppress defendant's statement (Doc. 20) as well

as the Government's response (Doc. 25) to both motions. The Court held a hearing on the motions

on August 14, 2013. All parties appeared at this hearing, and Defendant Franklin was represented

by counsel. Both parties called witnesses. At the end of the hearing, the Court ruled from the bench

that both motions were denied. This order sets forth the Court's findings of fact and conclusions of

law. To the extent that this order conflicts with any oral pronouncement at the motion hearing, the

findings in this order are the final and binding findings of the Court in the current matter.

## I.     Background[1]

Franklin is charged with possession and receipt of child pornography. On March 16, 2012,

Detective Donald Eversole of the Van Buren Police Department obtained a warrant to search a house

located at 514 Rena Road, Van Buren, Arkansas, including vehicles and outbuildings. (Gov. Hr'g

Ex. 6). The warrant was issued in reliance on a sworn affidavit, written and signed by Detective

Eversole earlier on March 16. The affidavit was composed with the assistance of deputy prosecutor

---

[1] The background is taken from the parties' briefs as well as testimony presented at the hearing. The Court's findings of fact are, in part, the result of credibility determinations made by the Court after hearing testimony from the parties' witnesses.

1

Robert Presley. The affidavit contains a recitation of Eversole's training, qualifications, and experience. The affidavit then states:

> On February 22, 2012, I was using the investigative program called Round Up. This program allows certified users to conduct investigations to locate suspects that are sharing suspected child pornography. On this date, the program showed that IP address 70.178.200.160 had shared suspect/know child pornography. I requested a subpoena from the Prosecutor's Office to Cox Communications to identify the subscriber of this IP address. On March 16, 2012, I received a return from the subpoena showing that the subscriber is Melvin Williams, 514 Rena Road, Van Buren, Arkansas.

(Gov. Hr'g Ex. 3).

After completing the affidavit, both Eversole and Presley took the affidavit to Judge Gary Cottrell. Judge Cottrell read the affidavit and asked Eversole questions about the Round Up program and how it worked as well as about tracing the IP address to a physical address. After Eversole answered the questions, Judge Cottrell signed off on the affidavit and issued the search warrant.

Eversole, with other officers including Sergeant Daniel Perry and Lieutenant Steven Staggs, executed the search warrant at the Rena Road property later that same day. When they arrived at the house, the officers knocked on the door. Franklin's grandfather, Melvin Williams, opened the door and let the officers into the house.[2] The officers informed Mr. Williams and his wife, Nancy Williams, that they had a search warrant and asked where they kept their computer. Mrs. Williams gestured to the area of the house where Franklin generally stayed and slept.

Franklin was not initially present at the house. At the suggestion of the officers, Mrs. Williams called her grandson. Some time later, Mr. Williams called and spoke to his grandson. While Mr. Williams was on the phone with Franklin, Eversole asked to speak to Franklin. Eversole

---

[2] It is disputed as to whether Mr. Williams explicitly invited the officers inside.

suggested that Franklin come to the house. Franklin claims that Eversole threatened to arrest his grandparents. This claim was supported by testimony by the Williamses. Eversole claims he did not, at any point, threaten to arrest the Williamses. That testimony was corroborated by testimony of the other officers on the scene. The Court finds that whether or not a threatening comment was made is ultimately immaterial to the issues to be decided in the instant suppression motions. The evidence presented, taken as a whole, does not support Franklin's argument that he made a confession or over-confessed as a result of any threat or other coercion.

Franklin later arrived at the scene, and the officers met him outside the house. Franklin had some conversation with his grandparents and the officers before Eversole read him his rights. Franklin was then taken to the police station. Eversole again read Franklin his rights, and Franklin expressed his understanding of those rights both orally and by signing a Miranda rights form (Gov. Hr'g Ex. 7). Franklin then proceeded to be cooperative and forthcoming in response to Eversole's interrogation. Having viewed the relevant portions of the interrogation video, the Court observes that Franklin did not appear at any time to be under duress nor did Eversole make any threats or otherwise attempt to inappropriately coerce Franklin into answering a question.

Franklin now moves to suppress evidence obtained as a result of the search warrant on the grounds that (1) the affidavit did not establish probable cause and did not set forth sufficient facts upon which probable cause could be found; (2) the search warrant was returned past the time set forth in the warrant; and (3) the officers conducted the search before a warrant was issued, failed to have the warrant with them at the time of the search, failed to inventory the items seized, and failed to provide Defendant or his family with a return of any kind. Franklin also argued that use of the Round Up program itself was an unlawful invasion of his privacy.

Franklin also moves to suppress any statements he made to law enforcement officers, both at his home and before his arrest and during the police interrogation after his arrest, on the grounds that (1) Franklin was not informed of his Miranda rights; (2) the statements were the result of coercion and threats; and (3) the statements were the result of the unlawful search of Franklin's home and should therefore be suppressed as "fruits of the poisonous tree."

## II.     Analysis

### A.     Motion to Suppress Evidence Seized in Search

First, the Court finds that use of the Round Up program was not an unconstitutional invasion of privacy. *United States v. Stults*, 575 F.3d 834, 842 (8th Cir. 2009) (defendant had no reasonable expectation of privacy in files retrieved from his personal computer when defendant had admittedly installed and used a peer-to-peer file-sharing program and made his files accessible to others for file sharing).

Second, the Court finds that Eversole's affidavit provided sufficient probable cause for issuance of the March 16, 2012 search warrant.[3]  "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 843 (quotation omitted).  "Whether a search warrant is supported by probable cause is determined by the totality of the circumstances; resolution of the question by an issuing judge should be paid great deference by the courts." *Id*. (quotation omitted).  When there is no evidentiary hearing before the issuing judge, "the probable cause determination must be based upon only that information which

---

[3] In his motion, Franklin also cursorily requests suppression of the search warrant issued later for search of Franklin's computers and other devices seized.  This request, however, was not supported by any argument in the motion or evidence presented at the hearing, nor can the Court find any basis for suppressing the later-issued warrant.  As such, Franklin's request is denied.

is found within the four corners of the affidavit." *Id*. (quotation omitted).

Although the information provided in Eversole's affidavit certainly could have been more detailed, the Court finds that the information is nevertheless sufficient to support a finding of probable cause. The affidavit establishes that Eversole was an experienced police officer who had received training and certification for peer-to-peer investigative techniques and who had extensive experience in investigating internet crimes against children. The affidavit then establishes that, by using an investigative program called Round Up on February 22, 2012, Eversole discovered that a specific IP address was sharing suspected or known images of child pornography. Eversole was then able to use that specific IP address to identify a subscriber and residence—514 Rena Road, Van Buren, Arkansas. As a result, a fair probability existed that contraband would be found at the Rena Road property in a computer and/or other related device(s).

Alternatively, the Court finds that, even had probable cause not been established by Eversole's affidavit, the officers acted in good faith in relying on the issuance of the search warrant. "In the absence of an allegation that the [issuing judge] abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984). The Supreme Court recognized certain circumstances in which the "good-faith exception" would not be applicable, *id*. at 923, but none of those circumstances are present in this case. First, in this case, Judge Cottrell was not misled by information in the affidavit that Eversole knew was false or that Eversole made with reckless disregard of the truth. Neither party alleges that Eversole lied or made reckless statements in the affidavit. Second, Judge Cottrell did not abandon his neutral role. In fact, he questioned Eversole

about the facts of the affidavit before issuing the search warrant. Third, the affidavit is not so lacking that officers would be unreasonable in believing that probable cause existed. Eversole composed the affidavit with the help of the deputy prosecutor and heard no objections from either the prosecutor or Judge Cottrell that would have given Eversole reason to doubt the existence of probable cause. Finally, the warrant adequately particularized the place to be searched and the things to be seized such that the officers were not acting unreasonably in presuming the warrant to be valid.

Next, the Court finds that, although the search warrant was returned past the time set forth in the warrant, the delay was not unreasonable under the circumstances nor did the delay prejudice Defendant. The Court will not suppress the evidence obtained through the search warrant based only on a non-prejudicial, technical violation of the issuing judge's order, especially where the Government has a reasonable explanation for the delay. *See e.g., United States v. Maholy*, 1 F.3d 718, 721 (8th Cir. 1993) (when a federal court must decide whether to exclude evidence obtained solely by state officers, the appropriate inquiry is whether the evidence was obtained in violation of the federal Constitution, not whether there was a violation of a state rule of criminal procedure or state statute—a search or seizure is to be judged as if the search or seizure had been made by federal officers). Under the circumstances, the warrant in this case was promptly returned to Judge Cottrell after the Judge's return from vacation. *See* Fed. R. Crim. P. 41(1)(f)(D) ("The officer executing the warrant must promptly return it . . . to the magistrate judge designated on the warrant.").

Finally, Franklin argues that the officers conducted the search before a warrant was issued, failed to have the warrant with them at the time of the search, failed to inventory the items seized, and failed to provide Defendant or his family with a return of any kind. The Court finds that Franklin is factually incorrect in arguing that the officers conducted the search before the warrant

was issued. While the search was executed the same day the warrant was issued, the Court finds that the warrant was issued prior to the search. There is a dispute as to whether the officers had the search warrant with them and whether they showed it to the Williamses when conducting the search. The Williamses testified that the officers never showed them the warrant, while the officers testified that they did. There is also a dispute as to at what point the Williamses and/or Franklin were provided with an inventory of the items seized. It does appear that they did receive inventories at some point, although potentially not at the time the warrant was executed.

Federal Rule of Criminal Procedure 41(f)(1)(B) requires that an officer present at the execution of the warrant prepare and verify an inventory of the property seized in the presence of the person from whom, or from whose premises, the property was taken. Federal Rule of Criminal Procedure 41(f)(1)(C) requires that the officer executing the warrant give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken. Even assuming that the officers violated Rule 41, "exclusion of evidence acquired during the search is required only if a defendant is prejudiced or if reckless disregard of proper procedure is evident." *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011) (quotation omitted). Franklin has not shown that he was prejudiced by any violation of Rule 41. It appears that he did receive an inventory of the items taken soon after his arrest. It is also not evident that there was a reckless disregard for proper procedure. The officers had obtained a search warrant, and there is no argument that they exceeded its scope. The officers testified that the warrant was shown to the Williamses. If their recollection is faulty, it nonetheless appears that any failure to show the warrant and/or leave a receipt was done inadvertently and not out of a reckless disregard for proper procedure.

**B.      Motion to Suppress Statements**

Franklin moves to suppress any statements he made to law enforcement officers, both at his home and before his arrest and during the police interrogation after his arrest, on the grounds that (1) Franklin was not informed of his Miranda rights; (2) the statements were the result of coercion and threats; and (3) the statements were the result of the unlawful search of Franklin's home and should therefore be suppressed as "fruits of the poisonous tree."  As already mentioned above, the Court does not find that Franklin's statements were made as the result of coercion or threats.  Furthermore, for the reasons already stated, the Court has found that the search of the Rena Road property was not unlawful.

Franklin's last argument was that he was not informed of his Miranda rights.  It is abundantly clear to the Court that Franklin was, in fact, informed of his Miranda rights more than once.  Eversole read Franklin his rights at the Rena Road property.  Eversole then informed Franklin of his rights again—both verbally and on a written form—at the police station.  Franklin acknowledged his understanding of those rights both verbally and by signing the written form.  The U.S. Supreme Court has held that the government may not use any statements, whether exculpatory or inculpatory, stemming from the custodial interrogation of a defendant unless the government first demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  To the extent that Franklin argues that any pre-Miranda statements should be suppressed, it is not clear that the statements were made as a part of a custodial interrogation.[4]  Also, in his motion, Franklin failed to specify any pre-Miranda statements that should

_____

[4] The Williamses testified that, when Franklin asked to go get a drink of water, the officers told him no.  There was no other evidence presented, however, to suggest that a person in Franklin's position would have considered his freedom of movement restrained to a degree that is usually

be subject to suppression, nor was that made entirely clear at the hearing.  Finally, in light of the statements Franklin made after he was Mirandized, it is unclear what purpose would be served by suppressing the limited statements Franklin might have made prior to his arrest.

**III. Conclusion**

For all the reasons set forth above, it was ordered from the bench that Defendant Franklin's two motions to suppress (Docs. 19 and 20) be DENIED**.**

IT IS SO ORDERED this 16th day of August, 2013.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE

associated with a formal arrest.  *U.S. v. Caldwell*, 954 F.2d 496, 499 (8th Cir. 1992).